## A09A1767. WILLIAMSON v. WILLIAMSON.
(690 SE2d 257)

JOHNSON, Presiding Judge.

This is an interlocutory appeal from the trial court's denial of a mother's motion to compel paternity testing of her child's legal father. For the reasons that follow, we affirm the judgment of the trial court.

Cynthia and Clinton Williamson married in 1996. Cynthia

---

YALE LAW LIBRARY

Williamson bore a child in January 2004, while the couple was still married. In November 2005, the Williamsons separated and, in May 2006, Cynthia Williamson filed for divorce. In her complaint, she alleged that Clinton Williamson might not be the child's biological father, and requested that the court order DNA testing to resolve the issue. Clinton Williamson opposed paternity testing.

The court held a hearing and, in July 2006, entered a temporary order providing that the parents would have joint legal custody of "the minor child of the parties," that Cynthia Williamson would have primary physical custody of the child, and that Clinton Williamson would pay child support to Cynthia Williamson. The same day the court signed the temporary order, Cynthia Williamson's attorney forwarded to Clinton Williamson's attorney a letter purportedly confirming that the parties agreed that "there is no longer an issue as to the paternity of their minor child," and there would be no paternity testing in the case.

In July 2008, after retaining a new attorney, Cynthia Williamson moved for genetic testing to ascertain whether Clinton Williamson is the child's biological father. Clinton Williamson, who has shared responsibility for the child throughout the marriage and separation, opposed the testing. At the hearing on the motion, the child's guardian ad litem testified that paternity testing would not be in the child's best interest, as there was a "very strong" father/son relationship. The trial court denied the mother's motion, finding that she is precluded from contesting paternity, and that paternity testing would not be in the child's best interest.

1. Cynthia Williamson contends she is not precluded from contesting paternity. We agree that the procedural history of this case does not preclude her from re-asserting the paternity issue.

Even if we assume, without deciding, that Cynthia Williamson is bound by her former attorney's statement that the parties agreed that paternity was not an issue,[1] we do not agree that the purported agreement determines the issue on a final basis. The agreement referenced in the attorney's letter was made in connection with the temporary order while the divorce action was still pending. The issue was clearly raised early in the pleadings, and there has yet to be a final decree adjudicating the parties' rights in the case. Under the circumstances, the alleged agreement does not prevent the mother from contesting paternity.

Nor does the fact that the temporary order provides that the parties have agreed to "have joint legal custody of the minor *child of*

---

[1] See *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 676 (2) (308 SE2d 544) (1983).

*the parties*" prevent the mother from raising the paternity issue. A temporary order is different in nature and purpose from a final divorce decree; it does not decide any final issues between the parties, or adjudicate the parental rights of the parties.[2] And the judge in a pending divorce action may from time to time, until the final decree is entered, modify his or her orders.[3] This case is distinguishable from *Ghrist v. Fricks*,[4] in which the mother and biological father waited until after the final divorce decree was entered to raise the paternity despite the fact that both she and the child's biological father knew before the divorce action was filed that the husband was not the child's father. Furthermore, the temporary order in this case does not specifically mention the issue of paternity. We hold that the temporary order did not adjudicate the final issue of paternity.

2. Cynthia Williamson contends that, pursuant to OCGA § 19-7-20 (b), the legitimacy of a child born in wedlock may be disputed and, therefore, the trial court erred in denying her motion for an order compelling Clinton Williamson to submit to genetic testing to determine paternity. Even though we hold that Cynthia Williamson has not waived her right to contest paternity in this case, we disagree that it was error for the trial court, which applied the "best interests of her child" standard, to deny her motion to require paternity testing.

> All children born in wedlock are deemed under law to be legitimate. A child's legal father is defined as the man married to the biological mother at the time the child was conceived or born, unless such paternity is disproved by final court order. Where a child is legitimate, the father has a claim to parental and custodial rights to the child. The public policy favoring the presumption of a child's legitimacy is one of the most firmly-established and persuasive precepts known in law.[5]

In this case, similarly to the situation in *Baker*, the trial court is faced with a situation where the mother of a child presumed to be legitimate sought paternity testing in order to delegitimate the child by claiming that her husband at the time of the child's conception and birth, although the legal father, is not the biological father.

---

[2] See generally *Mitchell v. Mitchell*, 184 Ga. App. 903, 905 (1) (363 SE2d 159) (1987).

[3] *Foster v. Foster*, 230 Ga. 658, 660 (198 SE2d 881) (1973).

[4] 219 Ga. App. 415, 418-419 (1) (465 SE2d 501) (1995).

[5] (Citations omitted.) *Baker v. Baker*, 276 Ga. 778, 779 (1) (582 SE2d 102) (2003).

YALE LAW LIBRARY

Cynthia Williamson is correct that the legitimacy of a child born in wedlock may be disputed.[6] However, the presumption of legitimacy is not easily rebutted. As the Supreme Court in *Baker* acknowledged, a presumed *father* who seeks to set aside a determination of paternity, thereby delegitimizing a child, "must clear a very high hurdle," as he is required to include in his motion: (1) an affidavit that newly discovered evidence has come to the movant's knowledge since the entry of judgment; and (2) results from a scientifically credible genetic testing administered within 90 days prior to the filing of the motion showing a 0% probability that he is the father. In addition, the movant must show: (3) the test was properly conducted; (4) the male has not adopted the child; (5) the child was not conceived by artificial insemination while the male was married to the mother; (6) the male did not act to prevent the biological father from asserting his parental rights to the child; and (7) the male paying child support with knowledge he is not the biological father has not (i) married the mother and voluntarily assumed the parental obligation and duty to pay child support, (ii) acknowledged paternity of the child in a sworn statement, (iii) been named as the biological father on the child's birth certificate with his consent, (iv) been required to support the child because of a written voluntary promise, (v) received written notice from a state agency or court directing him to submit to genetic testing which he disregarded, (vi) signed a voluntary acknowledgment of paternity as provided in OCGA § 19-7-46.1, or (vii) proclaimed himself to be the child's biological father.[7]

While recognizing that the Code does not address the situation wherein a mother seeks to delegitimate a child, *Baker* holds that just as OCGA § 19-7-54 reflects the need for the trial court to consider the best interest of the child in a legal *father's* claim for delegitimation, the trial court must also consider the child's best interest in considering a *mother's* claim for delegitimation.[8]

Because the law favors legitimation, even when the child's legal father may not be the biological father, a mother who wishes to delegitimate her child is not automatically entitled to compel the legal father to submit to genetic paternity testing but must first come forward with evidence sufficient to show that delegitimating the child is in the child's best interest. The record in this case contains no such threshold showing. Accordingly, the trial court did not abuse its discretion in denying Cynthia Williamson's motion to

---

[6] OCGA § 19-7-20 (b); *Baker*, supra.

[7] *Baker*, supra at 783 (4).

[8] Id. at 783 (4).

compel paternity testing.

3. Cynthia Williamson's motion to remand is denied.

*Judgment affirmed. Ellington and Mikell, JJ., concur.*

DECIDED JANUARY 26, 2010.

*Hagler, Henderson, Jackson & Walters, Amy C. Walters, Bert S. Harp, Jr.*, for appellant.

*Grogan & Grogan, Lynn L. Grogan*, for appellee.